## COURT OF APPEALS, JUNE TERM, 1820.

### HOUSE *vs.* HOUSE.

APPEAL from *Frederick* county court. This was an action of *slander.* The declaration contained three counts, to which the general issue was pleaded.

The only question in the case was, whether the defendant's having charged the plaintiff *with burning his,* the defendant's, *barn,* was, *per se,* actionable. These were the words laid in the declaration, and laid without a *colloquium.* The verdict and judgment were against the defendant, and he appealed to this court.

The case was argued before EARLE, JOHNSON and DORSEY, J.

*Taney,* for the appellant, relied on the act of 1809, *ch.* 138, s. 5. *The United States vs. Sheldon,* 2 *Wheaton,* 119. 1 *Chitty's Plead,* 381, 382. *Barnham's Case,* 4 *Coke,* 20. *Rex. vs. Horne,* 2 *Cowp.* 684. *Holt vs. Scholefield,* 6 *T. R.* 694. *Hawkes vs. Hawkey,* 8 *East,* 431. *Onslow vs. Horne,* 3 *Wils.* 186.

*Pinkney* and *R. Johnson,* also relied on the act of 1809, *ch.* 138, s. 5. *Oldham vs. Peake,* 2 *W. Blk. Rep.* 959,

JUNE 1820.

House vs House

The act of 1809, *ch.* 138, *s.* 5, punishes the burning of a barn, whether it contains the articles of personal property mentioned in that section, or other articles. The word *empty,* mentioned in that section, is used only to distinguish a barn, having the articles therein enumerated, from one that has not, and was not intended to mean a barn entirely empty. Every barn not containing, said enumerated articles is in the meaning of said section an *empty barn.* To charge another with burning a barn is *per se* actionable. Though penal laws are not to be extended by construction they are to receive a rational interpretation

DORSEY, J. delivered the opinion of the court. The counsel for the appellant has argued with much ingenuity, that the words laid in the declaration do not *per se* import an offence, for which the plaintiff could be prosecuted and punished, and therefore are not actionable, as no *colloquium* is stated in either count. His argument is this, that the act concerning crimes and punishments, passed in the year 1809, *ch.* 138, *s.* 5, declares it to be a felony to burn a barn that is empty, or having in it personal property; and inasmuch as a barn may have in it other things than personal property, as *animals feræ naturæ,* such a barn cannot be considered as empty; neither can it be considered as having personal property within it, and of course it is not an offence within the view of the act of assembly to burn such a barn; and therefore, to charge a man with burning a barn generally, is not actionable, because, by possibility, there may have been within it animals *feræ naturæ,* or human beings, and a barn in such a condition is not empty, neither does it contain personal property. The *sixth* section of the act declares, "that every person who shall be duly convicted of the crime of wilfully burning a mill, distillery, manufactory, barn, meat-house, tobacco-house, stable, ware-house or other house, being empty, or having therein any tobacco, wheat, rye, oats, indian corn, barley, flax, hemp, hay, or other country produce, horse or horses, cattle, goods, wares and merchandize, shall suffer death by hanging by the neck, or be sentenced to undergo a confinement in the penitentiary house for a term of time not less than three or more than twelve years." As the law inflicts the same punishment for burning an empty barn, as a barn containing any kind of personal property, it is difficult to conceive why the legislature have introduced such a laboured enumeration of articles. If they had used the expression "any barn," every object would have been answered. It is impossible to believe that the legislature did not intend to punish the burning of every barn, whatever its condition might be, when they were denouncing the severest penalties, even unto death, against those who should burn a barn either empty or having personal property in it. Can it be supposed that they meant

to exempt from punishment those, who by a conflagration should involve the building and the persons within it, in one common ruin? Or are we to suppose that they considered noxious animals, as *hostes humani generis*, and that therefore, both they, and their retreat, if it happened to be a barn, might with impunity be consumed by fire? The word "empty" must be considered as relative, and used in contradistinction to enumerated articles; and therefore, every barn within the view of the law must be considered as empty, that does not contain personal property. The legislature never intended to use the word "empty" in its strictest sense; because, under no circumstances could a barn, strictly speaking, be said to be empty. While we admit the principle, that penal laws are not to be extended by construction, we hold ourselves bound to give them a rational interpretation.

JUDGMENT AFFIRMED.